IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROBERT JAY BROWN,<br>TDCJ No. 02096329,<br><br>Petitioner,<br><br>v.<br><br>BOBBY LUMPKIN, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br><br>Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL NO. SA-21-CA-0145-XR |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Petitioner Robert Jay Brown's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) and supplemental memorandum in support (ECF No. 10), as well as Respondent Bobby Lumpkin's Answer (ECF No. 11) thereto. Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner is also denied a certificate of appealability.

**I. Background**

In October 2016, Petitioner plead guilty to two counts of aggravated assault with a deadly weapon. (ECF No. 12-5 at 48-57). Pursuant to the plea bargain agreement, Petitioner judicially confessed to committing the offenses as charged in the indictment in exchange for the State waiving two charges of aggravated assault and agreeing to a sentencing cap of fifteen years. *Id*. Following a separate punishment hearing, the trial court sentenced Petitioner to twelve years of imprisonment for each count, with the sentences to run concurrently. *State v. Brown*,

No. 2012CR10633A (437th Dist. Ct., Bexar Cnty., Tex. Oct. 13, 2016); (ECF No. 12-5 at 127-30).

Because he waived the right to appeal as part of the plea bargain agreement, Petitioner did not directly appeal his conviction and sentence. (ECF No. 12-5 at 52). Instead, he challenged the constitutionality of his convictions by filing a *pro se* application for state habeas corpus relief in October 2017, with an amended application being filed by counsel in August 2020. *Ex parte Brown*, No. 91,653-01 (Tex. Crim. App.); (ECF No. 12-5 at 4-42). The Texas Court of Criminal Appeals denied the applications without written order on February 10, 2021. (ECF No. 12-2).

Counsel for Petitioner filed the instant federal habeas petition two days later, with a supplemental memorandum in support following shortly thereafter. (ECF Nos. 1, 10). In the petition and supplemental memorandum, Petitioner raises three allegations that were rejected by the Texas Court of Criminal Appeals during his state habeas proceedings—namely, that (1) his plea was unknowing and involuntary because he was not advised that he would have to serve at least half of his sentence before becoming eligible for parole, (2) his trial counsel rendered ineffective assistance by failing to so advise him, and (3) his trial counsel rendered ineffective assistance at the punishment phase by failing to present a key expert witness.

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA. 28 U.S.C.A. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). So long as "fairminded jurists could disagree" on the correctness of the state court's decision, a state court's determination that a claim lacks merit precludes federal habeas relief. *Richter*, 562 U.S. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

//

//

### III. Merits Analysis

Pursuant to a plea bargain agreement, Petitioner judicially confessed to committing two counts of aggravated assault with a deadly weapon, acknowledged the range of punishment for these offenses, and waived his right to a jury trial in exchange for a sentencing cap of fifteen years. (ECF No. 12-5 at 48-57). Petitioner now challenges the constitutionality of his guilty plea by arguing that the plea was involuntary (Claim 1) and that he was denied his right to effective counsel (Claims 2, 3). Because he voluntarily plead guilty to the convictions he is now challenging under § 2254, however, Petitioner waived the right to challenge all non-jurisdictional defects in his proceedings. Moreover, these allegations were rejected by the state court during Petitioner's state habeas proceedings. As discussed below, the state court's rejection of these claims was neither contrary to, nor an unreasonable application of, Supreme Court precedent. *Richter*, 562 U.S. at 101.

**A.      Petitioner's Plea Was Voluntary (Claim 1)**

It is axiomatic that a guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005); *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against him." *Bousley v. United States*, 523 U.S. 614, 618 (1998) (internal quotation marks omitted). And a plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the

defendant. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *United States v. Juarez*, 672 F.3d 381, 385 (5th Cir. 2012).

The record in this case indicates Petitioner's plea was a voluntary and intelligent choice and not the result of any misrepresentation. To start, the voluntariness of Petitioner's plea is demonstrated by his signature on the "Court's Admonishment and Defendant's Waivers and Affidavit of Admonitions" and accompanying "Plea Bargain." (ECF No. 12-5 at 48-52). These documents demonstrate Petitioner was admonished as to the maximum punishment range for the second-degree offense of aggravated assault with a deadly weapon (two to twenty years of imprisonment), but that Petitioner's sentence was to be capped at fifteen years maximum. *Id*.

Petitioner also made the following concessions in his plea agreement:

1. I have had my Constitutional and legal rights explained to me by my attorney, and have decided to waive my Constitutional right of trial by jury and enter this plea before the judge. I hereby request the consent and approval of the State's Attorney and of the Court to my waiver of trial by jury. I further represent to the Court as follows:

2. I am mentally competent now and was legally sane at the time that this offense was committed.

3. I have not been threatened, coerced or placed in fear by any person to induce me to enter my plea.

4. If I have a plea bargain agreement with the prosecutor, its terms are fully set forth in the attached document. I have received no promise from the prosecutor, my attorney or the Court which are not set forth in that document, and I realize that no one else would be empowered to make me any promises.

5. If I am pleading GUILTY, it is because I am guilty, and for no other reason. If my plea is one of NOLO CONTENDERE, it is because I have considered all aspects of my legal situation and discussed them with my attorney and have determined that the entry of such plea is in my own best interest.

6. If applicable, my attorney has explained to me the requirements and consequences of Chapter 62 of the Texas Code Of Criminal Procedure Sex Offender Registration Program.

>    7. I understand the Courts admonishments as contained in this waiver.
>
>    8. I am satisfied with the advice and representation of my attorney in this case.

*Id*. at 50. Petitioner's trial counsel signed the agreement after concluding that Petitioner had a rational and factual understanding of the pending charges against him and the rights he was waiving, and the trial court approved the agreement by stating Petitioner was mentally competent and his waiver was knowing, intelligent, and voluntary. *Id*. at 51.

In addition, Petitioner signed a "Waiver, Consent to Stipulation of Testimony and Stipulations," where Petitioner stated he knowingly and voluntarily agreed to waive his rights to confrontation and cross-examination of witnesses and admitted that the allegations contained in the indictment are true and correct. *Id*. at 53-56. Counsel for Petitioner again signed the waiver, stating that he discussed with Petitioner the rights he was waiving and indicating his belief that Petitioner "fully understands these rights and has intelligently and voluntarily waived these rights and entered into these agreements after due deliberation[.]" *Id*. at 57. The trial judge then gave his approval of the waiver, concluding:

> The Defendant having signed the Waiver, Consent to Stipulation of Testimony and Stipulations in open Court and under oath, the Court questioned both the Defendant and his Counsel and thereby became satisfied that the Defendant understands the rights which have been waived and therefore can be truly said to have voluntarily relinquished known rights. The Waiver, Consent to Stipulation of Testimony and Stipulations are approved and ORDERED filed in the papers of the cause.

*Id*.

Petitioner's signature on the guilty plea documents is *prima facie* proof of the validity of the pleas and is entitled to "great evidentiary weight." *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994); *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (citing *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)). Petitioner's formal declarations in open court (ECF No. 12-4 at 4-12) also carry "a strong presumption of verity" and constitute a formidable barrier to any

subsequent collateral attack. *United States v. Kayode*, 777 F.3d 719, 729 (5th Cir. 2014) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Because Petitioner has not provided any evidence or argument that would overcome these "strong presumptions of verity," this Court denies any allegation made by Petitioner concerning the validity of his guilty plea. *Blackledge*, 431 U.S. at 74 (finding "[t]he subsequent presentation of conclusory allegations which are unsupported by specifics is subject to summary dismissal.").

**B.     The Ineffective-Assistance Claims (Claims 2, 3)**

By entering a knowing, intelligent, and voluntary guilty plea, a defendant waives all non-jurisdictional defects preceding the plea. *Tollett v. Henderson*, 411 U.S. 258, 265 (1973); *United States v. Scruggs*, 714 F.3d 258, 261-62 (5th Cir. 2013). This rule encompasses errors of constitutional dimension that do not affect the voluntariness of the plea, includes ineffective-assistance claims unless the alleged ineffectiveness relates to the voluntariness of the guilty plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983) (waiving claims of ineffective assistance, except for claims related to voluntariness of plea). As such, the only claims that survive a guilty plea are those implicating the validity of the plea itself. *Tollett*, 411 U.S. at 267; *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).

Here, Petitioner does make one allegation that, if successful, may implicate the voluntariness of his guilty plea: that trial counsel was ineffective for failing to advise him about parole eligibility consequences (Claim 2). According to Petitioner, counsel was required to inform him that, under the law in effect at the time he committed the crimes, he would not become parole eligible until at least half of his sentence had been served. Petitioner also raises an allegation (Claim 3) that counsel rendered ineffective assistance after the guilty plea was entered by failing

to obtain a witness to testify at the subsequent punishment hearing.  Neither of these allegations warrant federal habeas relief.

    1.    The *Strickland* Standard

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates both that (1) counsel's performance was deficient, and (2) this deficiency prejudiced his defense.  466 U.S. at 687-88, 690.  According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

To establish counsel's performance was deficient, a petitioner must first show his counsel's performance fell below "an objective standard of reasonableness."  *Id*. at 688-89.  When determining whether counsel performed deficiently, courts must be highly deferential to counsel's conduct, and counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690).

To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  But, in the context of a guilty plea, proving *Strickland*'s prejudice requirement turns "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S at 59.  This means, "in a guilty plea scenario, a petitioner must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error" and, instead, "would have insisted upon going to trial."

8

*Armstead v. Scott*, 37 F.3d at 206 (citations omitted). This assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id*.

    2.         <u>Parole Eligibility</u>

Petitioner contends his plea was involuntary because counsel did not explain that he would be required to serve at least half of his sentence—six years—before becoming parole eligible. Petitioner does not allege that counsel gave misleading or erroneous advice. Rather, Petitioner argues that he was not advised at all about the consequences of a deadly weapon finding on his eligibility for parole. Had counsel informed him of his parole eligibility date, Petitioner avers, he would not have pled guilty and would have insisted on going to trial.

A guilty plea is intelligent if the defendant understood the nature and substance of the charges against him and not necessarily whether he understood their technical legal effect. *See James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (citing *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991)). The "knowing" requirement that a defendant understand "the consequences" of a guilty plea means only that the defendant must know the maximum prison term and fine for the offense charged. *Id*. at 666. It is not necessary that a defendant be advised of all of the "collateral" consequences of his plea, including his eligibility for parole. *See Hill*, 474 U.S. at 56 (holding the Constitution does not require the State to furnish a defendant with information on parole eligibility in order for the defendant's plea to be voluntary); *James*, 56 F.3d at 667 (same). Thus, neither the Supreme Court nor the Fifth Circuit has held that a counsel's failure to correctly advise a defendant regarding parole eligibility amounts to ineffective assistance of counsel. *See Mitchell v. Quarterman*, 285 F. App'x 170, 171 (5th Cir. 2008) (citing *Hill*, 474 U.S. at 54-55); *James*, 56 F.3d at 667.

Further, even assuming counsel was deficient for not advising Petitioner about his parole eligibility, Petitioner cannot show he would not have accepted the current plea and would have instead insisted on going to trial but for counsel's errors. *Armstead*, 37 F.3d at 206. Again, such an assessment will turn partially on "a prediction of what the outcome of a trial might have been." *Id*. The record is silent as to whether Petitioner would have made the decision to plead not guilty and go to trial had counsel further explained the plea bargain and parole eligibility to Petitioner. In signing the waiver and stipulations of the trial court, however, the record does indicate that counsel fully explained his rights and the plea agreement to Petitioner and that Petitioner understood the plea was for a second-degree felony with a maximum possible sentence of up to twenty years of imprisonment. Petitioner also admitted he committed the offenses, agreed with the State's punishment cap of fifteen years, and was not coerced or misled into making the plea. Thus, based on the record before the Court, it appears unlikely Petitioner would have chosen to go to trial.

Because the record in this matter indicates that Petitioner's guilty plea was counseled, knowing and voluntary, and not coerced or induced by threats, promises, or misrepresentations, the state court's denial of this claim was not clearly contrary to or an unreasonable application of federal law.

   3.   <u>Punishment Witness</u>

Petitioner next contends that trial counsel was ineffective for failing to present the testimony of Dr. Emma Matta Gatlan at the punishment phase of his trial regarding his Post-Traumatic Stress Disorder (PTSD) diagnosis. Counsel had subpoenaed Dr. Gatlan, a physician with the Department of Veteran's Affairs (VA) who had counseled Petitioner regarding his PTSD, but she was prevented from testifying due to VA regulations restricting the circumstances in which

VA employees may testify. *See Touhy v. Ragen*, 340 U.S. 462 (1951) (holding that federal agencies may promulgate regulations controlling the release of agency documents to subpoena). Petitioner argues counsel did not properly execute a *Touhy* request and, as a result, the trial court was deprived of key information concerning his mental health and the effect of his military service.

Petitioner raised this allegation during his state habeas proceedings. In response, Petitioner's trial counsel, Robert Maurer, submitted an affidavit addressing Petitioner's assertion of ineffective assistance. (ECF No. 12-5 at 139-40). Based on counsel's affidavit, the state habeas trial court made the following findings:

- e. Mr. Maurer had a thorough knowledge of the facts of this case.

- f. Mr. Maurer also recognized the need for an expert to discuss the impact that [Petitioner]'s PTSD diagnosis had on a potential defense or mitigation argument.

- g. Mr. Maurer had extensive discussions with [Petitioner] about the role that his PTSD might have had in the accident. [Petitioner] informed Mr. Maurer that he had been engaged in counseling for his PTSD at the Department of Veteran's Affairs. That counselor was successful in having Mr. Maurer's subpoena quashed, which prevented her from appearing on [Petitioner]'s behalf.

- h. Mr. Maurer obtained another expert to testify concerning [Petitioner]'s PTSD to testify at sentencing, but that witness failed to appear. Mr. Maurer obtained a continuance, but was unable to secure that witness to testify.

*Id*. at 144-45. The trial court ultimately concluded that counsel's representation "was within the range of competence demanded of attorneys in criminal cases" and that Petitioner has not shown that he was denied effective assistance of counsel. *Id*. at 147. These findings and conclusions were adopted by the Texas Court of Criminal Appeals when it denied Petitioner's state habeas application. (ECF No. 12-2). Such determinations are entitled to a presumption of correctness unless they lack fair support in the record. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990); *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013).

11

Petitioner fails to show that the state court's ruling on trial counsel's performance was contrary to, or involved an unreasonable application of *Strickland* or that it was an unreasonable determination of the facts based on the evidence in the record. *Strickland* requires counsel to undertake a reasonable investigation. 466 U.S. at 690-91; *Charles v. Stephens*, 736 F.3d 380, 389 (5th Cir. 2013). Counsel must, at minimum, interview potential witnesses and make an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). However, claims regarding an uncalled expert witness "are speculative and disfavored by this Court as grounds for demonstrating ineffective assistance of counsel." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). To prevail on such a claim, a petitioner must name the witness, demonstrate the witness was available to testify, delineate the content of the witness's proposed testimony, and show the testimony would have been favorable to the defense. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

Here, it is clear from the record that counsel investigated Petitioner's PTSD and sought, albeit unsuccessfully, to have an expert testify on Petitioner's behalf at punishment. What is not clear is whether counsel submitted a proper *Touhy* request to procure Dr. Gatlan's testimony, or, assuming he did not, whether the VA would have allowed Dr. Gatlan to testify had he done so. Petitioner has provided no evidence showing that Dr. Gatlan was available to testify had counsel followed the established *Touhy* regulations and has brought forth no evidence or affidavits from Dr. Gatlan concerning her proposed testimony. *Evans*, 285 F.3d at 377 (providing petitioner must "bring forth" evidence, such as affidavits, from uncalled witnesses, including expert witnesses, in support of an IATC claim). For this reason, Petitioner has not shown counsel's performance was deficient under *Strickland*.

Even if Petitioner could establish that counsel's performance was deficient in this case, he still fails to demonstrate that the alleged error was prejudicial to his defense. Again, to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "[A] court assessing prejudice must consider the totality of the evidence before the judge or jury." *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 696) (internal quotation marks omitted).

Petitioner contends he was prejudiced because the trial court was deprived of key information about the effect his military service had upon his mental health which would have resulted in a lower sentence. But the trial court was not deprived of such information—to the contrary, Petitioner himself testified about his military service, his later diagnosis of PTSD, and his treatment by Dr. Gatlan. (ECF No. 12-4 at 89-96). Petitioner explained that as a result of his PTSD he becomes startled easily, making it difficult for him to calm down or rest well. *Id*. at 96. Petitioner also admitted that his medical records from the VA had been provided in preparation for his pre-sentence investigation report which was taken into consideration by the trial court. *Id*. at 111-12.

Furthermore, as the state habeas court found, the facts of Petitioner's crime were particularly egregious:

> [Petitioner] began following a white pickup truck that had nearly hit him. He admitted to exceeding the speed limit, and admitted that following the white truck was a bad decision. Witnesses gave statements saying that [Petitioner] was driving aggressively in an attempt to cut off the driver of the white truck. At times [Petitioner] was driving in the center turn lane. When the white truck applied his brakes, [Petitioner]'s truck hit the white truck from behind and caused it to collide with another car, which was sent into oncoming traffic and collided with a fourth vehicle being driven by Randy Nelson and his two year old son Braylon. The accident broke Braylon Nelson's spinal cord and paralyzed him from the neck down. He requires 24/7 nursing care and a ventilator to help him breathe at night.

>Randy Nelson suffered a right side fractured pelvis and multiple broken ribs and a fractured sternum.

(ECF No. 12-5 at 146). Given the devastating consequences of Petitioner's actions, it is unlikely that the results of his sentencing proceeding would have been different had counsel presented further testimony concerning Petitioner's PTSD diagnosis. This is particularly true given that Petitioner was ultimately sentenced well below the statutory maximum for a second-degree felony (twenty years) and the maximum cap agreed to under the plea bargain (fifteen years).

As such, Petitioner is unable to establish that counsel's performance was deficient or that he was prejudiced by counsel's alleged error. Because Petitioner fails to demonstrate that the state court's denial of Petitioner's ineffective-assistance allegation was not an unreasonable application of *Strickland*, relief on the claim is therefore denied.

## IV. Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the

14

Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V. Conclusion and Order

Petitioner has failed to establish that the state court's rejection of the aforementioned claims on the merits during his state habeas proceedings was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented during Petitioner's state trial and habeas corpus proceedings.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Federal habeas corpus relief is **DENIED** and Petitioner Robert Jay Brown's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2. No Certificate of Appealability shall issue in this case; and

3. All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED** this November 23, 2021.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE